All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you very much. Before we begin, I want on behalf of Judge Wallace and myself to thank Judge Gilman for his assistance to our circuit. He's a distant visitor, a remote visitor this time, but we always appreciate having you sit with us. I appreciate everyone's working to make this a reality in strange times. I want to make sure, Mr. Ramnitz, are you on the phone? Yes, this is Mr. Ramnitz. I'm on the phone. Okay, excellent. So we are about to hear argument in Roy v. Barr and Petitioner's Counsel may begin and we also want to thank all of you for doing this work pro bono. It's helpful to the court. Good morning, may it please the court. My name is Delaney Grewey. I'm a certified law student representing Petitioner Ms. Roy. I will be addressing the gender classification issue and my co-counsel will discuss the legitimacy classification and remedy. We would like to The now repealed United States Code section 1432A3 explicitly states on the basis of gender and is subject to heightened scrutiny. How is that so? Because if her mother had legitimated her, if the situation were reversed, she still would not be entitled to non-derivative citizenship because of the legitimation. So why is gender even an issue? If the roles were reversed, if her father was a woman, she would in fact have derived because she would not have been legitimated. Her mother's actions would not have qualified as legitimation had she been a man. So you think giving birth isn't a way of you are the child of? Well, here the interest at issue is protecting the rights of the other parent where the non-naturalizing parent is or isn't absent. And because legitimation is a gendered concept that only can ever require a father to take affirmative steps, there's no way to deem a mother absent here. And so only a mother has the option of conferring citizenship in this situation regardless of whether the other, a father can never confer regardless of whether the mother is absent. But the statute doesn't really deal with absence or presence. It simply deals with the ways in which, it doesn't depend on the sex of the parent who naturalizes. It doesn't depend on the sex of the parent who has custody. I just have a hard time, as did the 11th Circuit, seeing how there's a gender-based classification. Well there is in this clause of subsection 8.3 because it only allows a mother to confer gender-neutral and that's why we're proposing a gender-neutral standard to be used here as well. They are concerned with the absence of the parent where the other parent is deceased or not the sole custodian after a legal separation. But I don't see how this would help your client because if it were to say the naturalization of either parent, if the child is born out of wedlock and the other parent has not established by legitimation, but here I don't see how that would help your client. Yes, that's why we're proposing a standard that is not legitimation because legitimation itself is inherently a gendered standard. So we've offered standards such as... What you've offered counsel is a complete rewrite of the statute which is not really what equal protection permits. It just makes a whole different policy that has nothing to do with what Congress was doing. I don't understand how we can do that. Well my co-counsel will speak at more length about the details of the remedy but we feel that this would be most consistent with Congress's intention in the 2000 Act which allows naturalization through only one parent and that extracting the gendered language this way was the only way to cure the discriminatory aspects of the provision. So the government's justification of protecting the parental rights of the non-citizen parent is not exceedingly persuasive because it only endeavors to protect the rights of the non-naturalizing mother where it is safe to assume that the other parent is out of the picture. But this rationale in the use of a mechanism such as legitimation which could only be used to deem a father absent assumes that only the father would ever be out of the picture. The incongruity of the statute's protections indicate the basis in the same invidious stereotypes held impermissible in Sessions v. Morales-Santana, namely that the mother is the sole and natural caretaker of a child born out of wedlock. Let me ask you this, if the father had not legitimated your client, you'd be okay under the statute, wouldn't you? If the father had not legitimated your client, but he did legitimate your client. If the father had naturalized, yes, she would have derived. I'd like to pass to my co-counsel who will discuss the remedy for the constitutional violation and the legitimacy classification. Thank you. Thank you very much. Good morning, your honors. May it please the court. My name is Kasdan Mitchell and I also represent Petitioner Mrs. Roy. Section 1432A.3 categorically bars naturalized fathers from passing on automatically to their citizenship to children born out of wedlock. That same categorical bar does not apply to mothers and does not apply with respect to children born of a marriage. That is a discrimination based on gender. It's a discrimination based on legitimacy. And the sole justification that the government has offered is its interest in protecting the non-naturalized parent's right. Excuse me, as far as the legitimacy discrimination claim is concerned, we have recently decided, I'm not sure how to pronounce it, which rejects a legitimacy discrimination claim under subsection A.3. So how can you continue to make that particular argument? Your honor, this court in Maya Pulido confronted a different set of facts, a different legitimacy claim, and with respect to a different provision of subsection A.3. So just to be really clear about the facts that were at issue there. In that case, Mr. Maya Pulido was not born out of wedlock. The key distinction with this case is that Ms. Pulido was. Excuse me, that's factually different, but I'm not sure that that deals with the constitutional explanation that we gave about the structure of the statute. I understand your honor, and the reason that I focus on the facts there is because those facts inform the discrimination claim that was brought. So the discrimination claim that was brought and considered in Maya Pulido was with respect to married parents versus legally separated parents. That did not implicate illegitimacy. The challenge that we're bringing is the difference between legally separated parents and children born out of wedlock. That does directly implicate legitimacy. So the line that the court drew in Maya Pulido between marital status, which is subject to rational basis review, and legitimacy discrimination, which the court recognized in footnote 25 of Morales-Santana is subject to heightened scrutiny, that distinction does not apply in this case because we have an actual child born out of wedlock bringing a legitimacy-based, not a marital status-based claim. And so we think that squarely falls within the court's pronouncement in Morales-Santana that legitimacy-based discrimination is subject to the same heightened scrutiny standard that gender-based classifications are subject to. If I may just speak briefly about Your Honor's questions about legitimation with respect to my co-counsel. So to be clear, in Judge Graber, in your hypothetical where the roles were reversed, in that case, if the mom, you have to change the gender of both parties. So if the mom was the naturalized... But that's still, you know, I don't see how that would help her in this case because she knows who both her parents are and there's no relinquishment of non-legitimacy by the mother. So she is not similarly situated in the sense of being able to benefit by reversing the roles. So just to be clear, so in a reverse role scenario, what you would have is here you have a naturalizing mother with sole custody. And then the question is if you reversed the roles of the other parent. So you have a father who is present... Is custody in the statute? Let me look at this. It is the standard that is applied to parents of legally separated children and that's what, Your Honor, we submit as the proper remedy here. But this is the other clause. That's right. Okay. So if it read the naturalization of the father, if the child was born out of wedlock and the maternity of the child has not been established by legitimation, she knows who both her parents are. So she is not in a situation where there is a question mark about either of her parents. So it doesn't help her to change or expand the gender application of this clause. So I don't understand how that results in any remedy for her. And maybe this is where we are speaking past each other a bit. So the last part about the maternity of the child has not been established by legitimation, the reason that we're arguing that that legitimation requirement is itself gendered in this context is because if the mother were a father and all she did was show up at the child's birth, that would not be sufficient to legitimate the child. Right. But to be similarly situated in the reverse scenario, she would have to be in a situation in which the maternity of the child has not been established, but it is established here. And our only point is that by using legitimation in the last part of that clause, it's baking in a gender concept. If you look at the actual facts. Why is that true? Imagine that a woman who is not married gives birth to a baby and in the dark of night leaves it on the doorstep of the biological father. And he had sex with a bunch of different people nine months ago. He has no idea who the mother is. That would be the flip side of this in the statutory sense. That would fit the criteria of the statute with opposite gender, but it doesn't fit your client's situation. So she is not similarly situated to a person who could benefit from expanding the statute to include both sets of parents. And I don't see why there couldn't be legitimation in that situation by the mother if she decided to come forward at some point and say, yes, that's my child. We don't contest, and I think it's well settled, that a mom can legitimate through the giving of birth. The only point that we're trying to make with respect to this statute is that the same action, the presence at the time of birth for a father is insufficient to legitimate, which categorically bars. Yes, but that does not deal with my scenario at all, my example. Because in that example, the biological mother could come along later and say, okay, here I am. I am the one who left this baby on your doorstep, and I now want to claim that, and here's a DNA test to prove that I am the mother and this is my child. So it isn't the act of giving birth. There is a flip side available, but it doesn't benefit your client is my concern. Yes, Your Honor, and I understand that concern. Our principal argument is that if the facts were changed, in other words, if the father were present at the time of birth, that wouldn't be sufficient to legitimize, which means the effect of this statute is that unwed fathers are categorically barred from passing on citizenship to their unwed children. And if I may just shift to the legitimacy-based discrimination, which is a slightly different angle than the gender-based discrimination. You are using the rebuttal time, which is fine. You may do that. You're down to two minutes. Your Honor, I'll just briefly wrap up this point and then save any remaining time for rebuttal. The interest that the government is asserting here in protecting the non-naturalizing parents' right, there is no rational basis, much less an exceedingly persuasive reason, to draw that distinction among sole custodians, which is what A3 does. It draws a distinction between parents who are legally separated and parents who are never married, and that does not in any way advance the government's asserted interests. With that, Your Honor, I'd like to reserve the balance of my time for rebuttal. You may do that. Mr. Remnitz, are you there? Yes, Mr. Remnitz. May it please the Court, Your Honor, this is Tim Remnitz, former United States Attorney General. In this case, Mr. Challenge is the former Automatic Care of Asian Citizens statute, 1432A. Specifically, she claims impermissibly discriminates based on gender and legitimacy. Excuse me, sir? Sir? Yes. It's very murky to hear you. If you would speak more slowly, it might be helpful. Yes, it's breaking up on mine, too. I was using a hands-free device. Is this better? Yes. Okay. I'll stick to my phone. I was trying to be able to write with my hands. So I'll start again. May it please the Court, Your Honors, Tim Remnitz on behalf of the United States Attorney General. Can you all clearly hear me? Yes, but it will still help if you speak more slowly. Okay. Petitioner claims that Section 1432A impermissibly discriminates based on gender and legitimacy. However, this issue has already been decided by the Court. In Bartholomew, the Court rejected the exact same challenge. And Bartholomew held there is no sex-based distinction or legitimacy-based distinction in 1432A. Instead, the statute turns on preserving the nondiscriminatory parental rights. It held it does not turn on gender. It does not turn on legitimacy. And more recently, this Court held in Maillot-Polluto, it reaffirmed Bartholomew's ultimate holding that there is nothing unconstitutional about this statute. And that was a similar challenge based on Morales-Santana. And they were using Morales-Santana as a wedge to overrule Bartholomew. And while it was specifically based on the legitimacy part of Bartholomew, the reasoning is the same. Maillot-Polluto stated that Bartholomew found no suspect classifications. And therefore, the impact of Morales-Santana was very little. And that it only overturned the preliminary part of Bartholomew, which dealt with this preliminary notion that immigration statutes do not receive higher scrutiny even when they do discriminate against a suspect class because of Congress's plenary authority over immigration. That was overruled by Morales-Santana. But, Maillot-Polluto went on to say, that really was irrelevant because Bartholomew found there was no suspect classification. And as Petitioner admits in their reply brief, they raised the exact same gender-based and legitimacy-based claims that were addressed in Bartholomew. Consequently, as far as the government is concerned, their challenge is foreclosed by Bartholomew. And that is really the end of the case, in the government's opinion. And while it is true, as they note in a supplemental brief, that Maillot-Polluto did not reach specifically a gender-based claim, there is nothing in Morales-Santana that otherwise overrules the Court's reasoning that there is no gender-based distinction in this statute. Morales-Santana dealt with a different citizenship statute, with different justifications, and with different actions and different mechanisms. Therefore, the only impact of Morales-Santana is what the Court explained in Maillot-Polluto, that it simply overrules the fact that immigration statutes, even when they do discriminate against a suspect class, they don't receive higher scrutiny. That's done away with, but there is no suspect classification in this statute. So Bartholomew remains good law for closing Petitioner's arguments.  I don't. Do my colleagues have questions? I'm fine, thank you. Okay, thank you very much. I believe Petitioner, I don't know which counsel is going to do the remodel for Petitioner. Ms. Mitchell. Yes, Your Honor, and I'll be very brief. I just want to make two principal responses to the government's argument. The first is with respect to this Court's decision in Bartholomew. The Court applied heightened scrutiny to legitimacy classification at issue in that case, and that standard of scrutiny has been overruled by Morales-Santana, and therefore that aspect of Bartholomew does not bind this panel. Second, the principal justification that the Court in Bartholomew gave for rejecting Mr. Bartholomew's gender claim was reliance on the Nguyen case. In Morales-Santana, the Supreme Court said that Nguyen is a valid justification only with respect to, quote, establishing the parent's filial tie to the child. The interest that the government is advancing here is not related to the biological relationship between a parent and child, but to their parental relationship in terms of caring for the child and things of that nature. There's no dispute in this case that Mr. Preroda is Ms. Roy's father, and as such, he should be entitled to the same opportunity to automatically confer citizenship on his daughter as he would be if he were her mother, or as if he would be if his daughter were not a wedlock but was instead a child born of marriage. For those reasons, we ask that this Court hold that the statute violates equal protection and that it remedy it by extending citizenship to Ms. Roy. Thank you very much for your time. Thank you, Counsel. We appreciate very much the arguments of all three of you, and again, we are grateful for the pro bono representation. The case just argued is submitted.
judges: Wallace, Gilman, Graber